C. W. Oliver v. Commissioner.
Oliver v. Commissioner
Docket No. 110237.
United States Tax Court
1943 Tax Ct. Memo LEXIS 307; 2 T.C.M. (CCH) 78; T.C.M. (RIA) 43229; May 12, 1943
*307 Robert A. Littleton, Esq., 1021 Tower Bldg., Washington, D.C., for the petitioner. Philip A. Bayer, Esq., for the respondent. TURNER Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent has determined deficiencies in income tax against the petitioner for the years 1938, 1939 and 1940 in the respective amounts of $135.66, $79.24 and $760.96, and penalties for the years 1938 and 1939 in the respective amounts of $33.92 and $19.81. The question presented is whether the property, from which the petitioner sold lots during the taxable years, was a capital asset or was held by him primarily for sale to customers in the ordinary course of his trade or business. If the property in question is treated as a capital asset, the petitioner is liable for income tax on 50 per cent of the profits realized, otherwise the profit is taxable in full as ordinary gain. Findings of Fact The petitioner is an individual and resides at Bailey's Cross Roads, which is served by Rural United States Mail Route No. 2 from Alexandria, Virginia. His income tax returns for the years involved were filed with the Collector of Internal Revenue for the District of Virginia. All three returns were *308 filed June 11, 1941. The petitioner stated on his returns for 1938 and 1939 that his principal occupation or profession was "Real Estate," and on the 1940 return that it was "Rents, Real Estate." During the period between 1914 and 1926 the petitioner acquired approximately 250 acres of land in Virginia, which consisted of six different tracts. The largest was known as the Home Place and contained about 92 acres. The petitioner farmed the land on the Home Place and used the other tracts for grazing cattle. Prior to 1929, and with the assistance of his two sons, he operated a dairy in conjunction with his farming. In 1929 he quit the dairy business, auctioning off the dairy and disposing of all his cattle except what he needed for his own use and a little milk he would sell to his neighbors. He thereafter kept only farm stock, consisting of two work horses, five or six milk cows, and fifteen or twenty head of feed cattle which he bought for feeding and sale as beef cattle. He also took in cattle to graze, for which he charged a fee to the owner. He continued his operations on the Home Place and used the other tracts of land for grazing cattle during the summer months. From time to *309 time after he quit the dairy business, the petitioner sold some of his property for building sites. From a 75-acre tract, which was next in size to the Home Place, he sold 2, 3, 5, or 10 acre tracts. He would have the county surveyor survey each parcel of land as it was sold. He made some sales between 1929 and 1938 from the Home Tract, and before 1938 sold off, in small parcels, nearly all of the 75-acre tract. As there was such a demand by prospective buyers, who came to his place, for pieces of the property, he had the necessary surveys made and dedicated certain of the properties as subdivisions, the last being the Home Place in 1938. He opened up the properties for sale a street at a time, as he had demand for them. The purpose of the survey was to lay out streets and mark out lots for sale. The petitioner personally supervised the subdivision and improvement of the properties. Subdividing the various properties was an expensive job, all of which was paid by petitioner. As he opened up streets he had them graded and graveled. Conduit pipe was laid wherever necessary for drainage. The subdivisions were given different names. Courtland Park had 360 lots; Rock Springs had 40 lots; *310 Riverview Heights, 24 lots; Englandboro, 49 lots; and the Byrne property had 75 lots. The petitioner never advertised his property for sale or employed solicitors. He had one sign on the Home Tract showing "LOTS and ACREAGE FOR SALE." He did not have a real estate dealer's license, nor did he hold himself out as a dealer in real estate. He continued to farm that part of the Home Tract for which demand had not developed and would take prospective buyers to the various properties as they inquired at his home. He continued to do some farming and did the work in connection therewith personally except for that done by a hired hand employed occasionally by the day. Although he originally acquired the land for farming purposes, the petitioner is willing to sell the whole or any part of it to a person or persons desiring to buy it. In 1938 he made 24 different sales of property, in 1939, 16 sales, and in 1940, 40 sales. Petitioner has erected some houses on the property which he rents. In his income tax returns for 1938, 1939 and 1940 the petitioner showed income from sales of real estate, rents received and interest received. No income was shown as received from his farm activities. He *311 had not filed a return prior to 1938, as he barely made a living out of farming. The petitioner sold the lots on the installment basis, with a small cash payment, but reported the sales as completed transactions for income tax purposes. The petitioner was in two businesses, farming and selling lots. The petitioner had not realized that he had done business enough to require the filing of an income tax return until his attention was called to it by a tax collector after he had begun to sell the lots. Opinion The respondent contends that the petitioner was in the business of selling lots and that the profit from such business is taxable as ordinary income. It is the contention of the petitioner that he was not engaged in such business, but was liquidating a capital asset which he acquired in his farmdairying business. The petitioner did acquire the property for farming purposes and used it in his farm operations and dairying business. After he quit the dairy business the petitioner, because of the demand for the small parcels of land, went into the business of selling lots, subdividing the remainder of his property into a total of 473 lots, and dedicating the survey to the public. *312 He personally stood the heavy expense of marking off the lots, grading and graveling the streets and putting in the necessary drainage conduits. It is evident that he was busy at making money from this undertaking for he was not making it at the small amount of farming he was doing. He was in two businesses, farming and selling lots, just as he was formerly in two businesses when he farmed and operated his dairy. We have held that a taxpayer can be engaged in more than one business. . The one case the petitioner relies on, , can be distinguished because of the facts. The Supreme Court there supported the Board of Tax Appeals and the Commissioner in their conclusion that the taxpayer's expenses in connection with managerial attention to his extensive investments in stocks and bonds, in conjunction with his real estate business, were not deductible as expenses paid in "carrying on business" within the statute permitting deduction of expenses paid in carrying on trade or business in computing taxable income. From the facts and circumstances, it was determined *313 that the taxpayer was only in one business. As the Supreme Court stated in its opinion, "To determine whether the activities of a taxpayer are 'carrying on a business' requires an examination of the facts in each case." The facts in the instant case clearly show that the petitioner carried on the business of selling lots. The contention of the petitioner that he merely liquidated a "capital asset" acquired in his business of farming cannot be upheld. The liquidation test has been rejected as being conclusive in determining whether or not a taxpayer is carrying on a trade or business. , affirming ; certiorari denied, ; and , affirming . As was so aptly expressed by the Board of Tax Appeals in the Richards case, what the petitioner "has done is to take certain assets individually owned and devoted them to a new purpose." It does not matter that the petitioner did not buy the land for resale or that he purchased it *314 for farming purposes, or that the character of the land was not changed by the survey and could be used for farming purposes. He decided to devote it to the "lot selling" business and it became property held by the taxpayer primarily for sale in the course of his trade or business. He was so holding the land during the taxable years involved. The respondent is accordingly sustained in his determination that the profit realized by the petitioner from the sale of real estate is taxable as ordinary income and not as gain from the sale of capital assets. There is some discussion in the briefs as to the addition to tax determined by the respondent because of the petitioner's failure to file his 1938 and 1939 returns within the time prescribed by the statute. While in a preliminary paragraph of his petition the petitioner does refer to such additions as being in controversy, the petition contains no allegation of error in respect thereto. Since we are limited to the consideration of issues raised by the pleadings, we express no views on the matter of additions for the delinquent filing of the said returns. For discussion, *315 however, of what constitutes reasonable cause under the statute for the delayed filing of returns, see ; ; and . Decision will be entered for the respondent.